IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

DEC - 3 2010

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

United States of America,      )
                               )
        v.                     )
                               )
2001 Lexus LS430               )
VIN: JTHBN30F910017797,        )      Case No. 1:10cv94(GBL)
                               )
        and                    )
                               )
1998 Mitsubishi 3000GT         )
VIN: JA3AM84J7WY003061,        )
                               )
        Defendants.            )

### MEMORANDUM ORDER

THIS MATTER is before the Court on Claimant Mark Allen Jackson's Motion for Judgment on the Pleadings. (Dkt. No. 15.) This case concerns the Government's Motion to forfeit Mr. Jackson's two personal vehicles. Mr. Jackson used the vehicles to transport a minor female from Maryland to Virginia, where he engaged in sexual intercourse with her on three separate occasions.

There is one issue before the court. The issue is whether a substantial connection exists between Mr. Jackson's vehicles and his offense of interstate travel with intent to engage in illicit sexual conduct pursuant to the Civil Asset Forfeiture Reform Act ("CAFRA") of 2000. The Court denies Mr. Jackson's Motion because the Government pleads sufficient facts to show that a substantial connection exists between Mr. Jackson's vehicles and his offense.

1

Mark Allen Jackson is a retired military officer and former ROTC instructor for a Maryland high school. (Compl. ¶ 7; Claimant's Mot. J. Pleadings 2 [hereinafter "Mot."].) On three separate occasions, Mr. Jackson drove one of his ROTC students, Jane Doe, from her Bowie, Maryland residence to his Alexandria, Virginia apartment, where they engaged in sexual intercourse. (Compl. ¶ 9; Mot. 2.) On each of these occasions, Mr. Jackson used a different one of his personal vehicles, namely a two-seat 2004 Lexus C430-2, a four-seat 2001 Lexus LS430, and a four-seat 1998 Mitsubishi 3000 GT. (Compl. ¶¶ 1, 11, 12, 14.) On one of these occasions, Jane Doe's mother believed that Mr. Jackson was transporting several students to an extracurricular activity, and believed he would drive Jane Doe from her residence for that purpose. When Jane Doe's mother asked Mr. Jackson how he would transport several students in the two-seat 2004 Lexus C430-2 he was driving, Mr. Jackson replied that he would make several trips because his other vehicles were being repaired. (Compl. ¶ 12.)

Several months into Mr. Jackson and Jane Doe's illicit relationship, an anonymous caller informed Prince George's County Schools of this relationship, which resulted in a school investigation and law enforcement's involvement. (Compl. ¶ 10.) Mr. Jackson was later arrested and pled guilty to interstate travel with intent to engage in illicit sexual conduct, in

violation of 18 U.S.C. § 2423(b) (2006). (Compl. ¶¶ 10 & 15; Mot. 3.) Although Mr. Jackson and Jane Doe did not engage in sexual conduct inside the vehicles, the Government now seeks to forfeit two of the three personal vehicles Mr. Jackson used to transport Jane Doe from Maryland to Virginia—the four-seat 2001 Lexus LS430 and the four-seat 1998 Mitsubishi 3000GT—arguing that these vehicles are "facilitating property" subject to civil forfeiture. (Compl. ¶¶ 1 & 17.) The Government does not seek forfeiture of the two-seat 2004 Lexus C430-2 because it has a lien in excess of its value. (Compl. ¶ 14.)

On January 29, 2010, the Government filed a Verified Complaint *In Rem* formally seeking forfeiture of the four-seat 2001 Lexus LS430 and the four-seat 1998 Mitsubishi 3000GT, pursuant to 18 U.S.C. § 2428. This case is before the Court on Mr. Jackson's Motion for Judgment on the Pleadings, pursuant to Federal Rule of Civil Procedure 12(c).[1]

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(c) allows a party to move for judgment on the pleadings after the pleadings are closed but

---

[1] At the June 24, 2010, hearing on Mr. Jackson's Motion for Judgment on the Pleadings, the Court granted judgment in favor of Mr. Jackson. (Dkt. No. 19.) On July 19, 2010, the Government filed a Rule 59(e) Motion to Reconsider, requesting that the Court reverse its original ruling to correct a clear error of law. (Dkt. Nos. 21 & 22.) After considering the Government's Motion, the Court found reversal appropriate and granted judgment in favor of the Government. (Dkt. No. 32.) The Court now expounds on its denial of Mr. Jackson's Motion for Judgment on the Pleadings.

within such time as not to delay the trial. FED. R. CIV. P.

12(c). In ruling on a motion under Rule 12(c), the court applies

the standard for a Rule 12(b)(6) motion. *See, e.g., Edwards v.*

*City of Goldsboro,* 178 F.3d 231, 243-44 (4th Cir. 1999).

However, unlike the adjudication of a 12(b)(6) motion, a grant of

a motion for judgment on the pleadings constitutes a final

judgment on the merits of the controversy. 5C CHARLES ALAN WRIGHT &

ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1372 (3d ed. 2004).

A Federal Rule of Civil Procedure 12(b)(6) motion should be

granted unless an adequately stated claim is "supported by

showing any set of facts consistent with the allegations in the

complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 561

(2007). In addition, the court must construe the complaint in

the light most favorable to the plaintiff, read the complaint as

a whole, and take the facts asserted therein as true. *See Mylan*

*Labs, Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir. 1993); *see*

*also Burbach Broad. Co. v. Elkins Radio Corp.,* 278 F.3d 401, 406

(4th Cir. 2002) (stating that in a 12(c) motion, all facts

asserted in the complaint must be taken as true and all

reasonable factual inferences must be drawn in favor of the

plaintiff). Conclusory allegations regarding the legal effect of

the facts alleged need not be accepted. *See Labram v. Havel,* 43

F.3d 918, 921 (4th Cir. 1995). Because the central purpose of

the complaint is to provide the defendant "fair notice of what

the plaintiff's claim is and the grounds upon which it rests,"
the plaintiff's legal allegations must be supported by some
factual basis sufficient to allow the defendants to prepare a
fair response. *Twombly*, 550 U.S. at 556 n.3.

## III. ANALYSIS

The Court denies Mr. Jackson's Motion for Judgment on the
Pleadings because the Government pleads sufficient facts to
plausibly suggest that a substantial connection exists between
Mr. Jackson's vehicles and his offense of interstate travel with
intent to engage in illicit sexual conduct, as codified in 18
U.S.C. § 2423(b). Section 2423 is subject to civil forfeiture
provision 18 U.S.C. § 2428, which states, in relevant part:

> The court, in imposing sentence on any person convicted
> of a violation of this chapter, shall order . . . that
> such person shall forfeit to the United States . . .
> such person's interest in any property, real or
> personal, that was used or intended to be used to
> commit or to facilitate the commission of such
> violation . . . .

18 U.S.C. § 2428(a) (2006). Additionally, § 2428 is subject to
the standards set forth in CAFRA, which states that, "if the
Government's theory of forfeiture is that the property was used
to commit or facilitate the commission of a criminal offense . .
. the Government shall establish that there was a substantial
connection between the property and the offense." 18 U.S.C. §
983(c) (2006). Moreover, CAFRA's amendment in 2000 created a
heightened burden of proof for the Government, requiring that it

5

establish a substantial connection by a preponderance of the evidence, rather than the previous standard of probable cause. *United States v. One 1998 Tractor*, 288 F. Supp. 2d 710, 713 (W.D. Va. 2003); *see* § 983(c). Accordingly, under *Iqbal* and *Twombly's* pleading standard, the Government must assert a plausible claim for civil forfeiture by alleging sufficient facts to show that a substantial connection exists between the property it seeks to have forfeited and the offense.

Although CAFRA sets forth the requirement that the Government establish a substantial connection to state a claim for civil forfeiture, CAFRA does not define substantial connection. Several courts since CAFRA's amendment in 2000 have considered different factors in formulating tests to define substantial connection. The United States Court of Appeals for the Fourth Circuit in *United States v. Herder* has recently adopted the obstruction and hindrance test. *United States v. Herder*, 594 F.3d 352, 365 (4th Cir. 2010). There, the court allowed the criminal forfeiture of $1,223 in proceeds found on the defendant's person when circumstantial evidence established that the proceeds were used to facilitate the distribution of crack cocaine. *Id.* In justifying the forfeiture, the court held that a "[s]ubstantial connection may be established by showing that use of the property made 'the prohibited conduct less difficult or more or less free from obstruction or hindrance.'"

*Id.* at 364 (citing *United States v. Schifferli*, 895 F.2d 987, 990-91 (4th Cir. 1990) (internal citations omitted)). Specifically, the Fourth Circuit explicated, "[w]e have never adequately articulated the proper standard for the requisite nexus between property and crime under § 853. We now expressly adopt the 'substantial connection' standard from case law interpreting nearly identical civil forfeiture language in 21 U.S.C. § 881 (2006)." *Id.* (addressing § 853, which governs criminal forfeitures, and § 881, which governs the forfeiture of property used to violate the Drug Abuse Prevention and Control Act).

Here, Mr. Jackson makes three arguments to distinguish *Herder* from the instant case. First, *Herder's* holding regarding substantial connection is dicta because CAFRA's substantial connection test only applies to facilitation forfeiture, not proceeds forfeiture. Further, *Herder* was a forfeiture of proceeds case that was not decided pursuant to CAFRA. (Claimant's Opp'n to Mot. to Reconsider 5-6.) Second, because *Herder's* statement of the substantial connection test is dicta, *Herder* provides no guidance for resolving the substantial connection question in this case. The Court must therefore rely on the legislature's intent in enacting CAFRA, which requires a primary purpose test to establish substantial connection. (Claimant's Opp'n to Mot. to Reconsider 7; Claimant's Mot. J.

Pleadings 10.) Third, no federal decision has approved of vehicle forfeiture on facts similar to this case because illicit sex, unlike offenses such as drug distribution, does not depend on vehicular transportation. Mr. Jackson reasons that something more than the mere transportation of a minor to the site for sex is required to satisfy the substantial connection requirement. (Claimant's Opp'n to Mot. to Reconsider 6; Claimant's Mot. J. Pleadings 5.) The Court addresses each of Mr. Jackson's arguments in turn.

## (a) **Obstruction or Hindrance**

Mr. Jackson argues that *Herder's* statement of the substantial connection test is dicta because *Herder* was a criminal forfeiture of proceeds case rather than a civil forfeiture of facilitating property case. (Claimant's Opp'n to Mot. to Reconsider 5.) Mr. Jackson reasons that the issue in *Herder* was not the extent of the connection between the drugs and the money, but whether the money was in fact the proceeds of a drug transaction. (Claimant's Opp'n to Mot. to Reconsider 6.) The Court rejects this argument for two reasons. First, although the issue in *Herder* concerned the criminal forfeiture of proceeds, the court's express language acknowledges that the same substantial connection test applies for civil forfeitures. *Herder*, 594 F.3d at 364 ("We now expressly adopt the 'substantial

connection' standard from case law interpreting nearly identical
civil forfeiture language in 21 U.S.C. § 881 (2006).").

Second, Mr. Jackson's argument that *Herder* is inapplicable
because it was not decided pursuant to CAFRA is unconvincing,
since the forfeiture statutes in *Herder* and the instant case are
substantially similar. *Herder* employed 21 U.S.C. § 853, a
criminal forfeiture statute commonly used in relation to the drug
distribution offenses subject to forfeiture under 21 U.S.C. §
881. *Id.* Section 853(a) allows the forfeiture of real or
personal property that is "used, or intended to be used, in any
manner or part, to commit, or to facilitate the commission of"
the drug offenses contained within the Drug Abuse Prevention and
Control Act. 21 U.S.C. § 853(a)(2). Similarly, § 881 requires
that no property right shall exist in "conveyances, including
aircraft, vehicles, or vessels, which are used, or are intended
for use, to transport, or in any manner to facilitate the
transportation, sale, receipt, possession, or concealment of
[controlled substances] . . . ." 21 U.S.C. § 881. Comparatively,
18 U.S.C. § 2428, the forfeiture statute applicable to Mr.
Jackson's offense, states that no property right shall exist in
"any property, real or personal, used or intended to be used to
commit or to facilitate the commission of any violation of this
chapter." Thus, the language of the criminal forfeiture statutes
interpreted in *Herder* is comparable to the civil forfeiture

statute applicable to the instant case. The only difference is that § 2428 does not delineate the types of conveyances that are subject to forfeiture. This is not dispositive because the legislature likely anticipated that personal property would include any personal vehicles used to commit transportation offenses; the forfeiture provision aims to address this issue by allowing forfeiture of both real and personal property.

Again, *Herder*'s language indicates that a substantial connection can be established under both forms of forfeiture through the obstruction or hindrance test. *Id.* at 364-65 ("We now expressly adopt the 'substantial connection' standard from case law interpreting nearly identical civil forfeiture language in 21 U.S.C. § 881 (2006)."). Yet, according to Mr. Jackson's reasoning, even if *Herder's* obstruction or hindrance test applied, it would not be satisfied because Mr. Jackson's vehicles did not affect the difficulty of his offense. Mr. Jackson contends that the essence of his offense was the illicit sexual activity, which was not made less difficult by use of his personal vehicles to travel across state lines. (Claimant's Mot. J. Pleadings 11.) The Court rejects this argument for two reasons. First, the name and description of the offense, codified in § 2423(b), indicate that travel in interstate commerce is the lynchpin of the offenses listed within. *See* 18 U.S.C. § 2423(b) (listing "[t]ravel with intent to engage in

10

illicit sexual conduct" as one of the three main offenses within that code section). Moreover, the title of § 2423, "Transportation of Minors," indicates that the purpose of that section is to regulate not solely illicit sexual activity, but interstate travel for illicit purposes.

Second, the fact that Mr. Jackson's offense is subject to civil forfeiture provision § 2428 shows that the legislature intended to allow forfeiture of property that would commonly facilitate such transport, including personal vehicles. Thus, the conduct that would need to be made more or less difficult is Mr. Jackson's act of transporting Jane Doe from her Bowie, Maryland home to Mr. Jackson's Alexandria, Virginia apartment. Given the facts pled in the Government's Verified Complaint, the Court can reasonably infer that use of Mr. Jackson's personal vehicles made Mr. Jackson and Jane Doe's transport less difficult and more or less free from the obstructions and hindrances that Mr. Jackson and Jane Doe would have encountered had they used the alternatives of walking, biking, or taking public transportation to travel over twenty-five miles from Bowie, Maryland to Alexandria, Virginia.

**(b) Intent to Conceal**

Mr. Jackson argues that *Herder* provides no guidance for resolving the substantial connection question in this case, and the Court must therefore rely on the legislature's intent in

enacting CAFRA to define substantial connection. To support this contention, Mr. Jackson points to Representative Henry Hyde's statements regarding CAFRA's amendment. Because Representative Hyde was CAFRA's principal proponent, his statements embody much of the statute's legislative intent. (Claimant's Opp'n to Mot. to Reconsider 7; Claimant's Mot. J. Pleadings 10.); see 146 CONG. REC. H2040, 2047 (indicating that CAFRA's amendments in 2000 were led by Representative Hyde, who first proposed and spear-headed CAFRA's original enactment in 1993). According to Mr. Jackson, Representative Hyde explained that, "where concealment is the theory of facilitation, the government must establish that 'a primary purpose' of owning the property must have been to disguise the criminal conduct." (Claimant's Reply in Supp. Mot. J. Pleadings 4 (citing 146 Cong. Rec. at H2051).) However, Mr. Jackson seems to assume too much from Representative Hyde's statements, which actually provide that

> [u]nder [CAFRA's] substantial connection test, in order
> for an entire bank account composed of both tainted and
> untainted funds to be forfeitable, a primary purpose of
> its establishment or maintenance must be to disguise a
> money laundering scheme. This rule should also apply
> when the government seeks to forfeit an entire business
> because tainted funds were laundered in a firm bank
> account. For the business to be forfeitable, a primary
> purpose for the establishment or maintenance of the
> entire business must be to disguise a money laundering
> scheme.

146 CONG. REC. H2040, 2051. A close examination of these statements and their surrounding text reveals that Representative

12

Hyde does not clearly state an over-arching test for establishing

a substantial connection. Instead, he merely gives examples of

what might create a substantial connection when the Government

attempts to forfeit real property and the entire proceeds of

businesses that form individuals' livelihoods. Despite Mr.

Jackson's insistence that the Court accept Representative Hyde's

primary purpose comments as the rule for substantial connection,

the Court cannot ignore that (1) the legislature did not include

this alleged rule in the language of CAFRA, and (2) Mr. Jackson

can only offer *United States v. One 1998 Tractor* as the sole

decision in the ten years following CAFRA's amendment that

possibly uses this "primary purpose" test.

Mr. Jackson argues that the substantial connection test used

in *United States v. One 1998 Tractor* is similar to the "primary

purpose" test supposedly espoused by Representative Hyde.

(Claimant's Reply in Supp. Mot. J. Pleadings 4.)  In *One 1998

Tractor*, the court found no substantial connection where the

claimants used a truck and trailer to conceal and transport

contraband cigarettes.  288 F. Supp. 2d 710, 714 (W.D. Va. 2003).

The court held that the government failed to show

> proof of the owner's intent to use the property for the
> purpose of shielding . . . criminal activity[, which]
> qualifies as the something more required to establish a
> substantial connection. . . . Because the government
> has not provided any evidence indicating that
> Shimshiryan's trucking business was a sham, or that he
> operated it with the intent of concealing his criminal
> activity, it has not met its burden of proof.

*Id.* (internal quotations omitted). Mr. Jackson contends that by requiring the government to present evidence indicating that the trucking business was a sham, the *One 1998 Tractor* court required not only that there be an intent to conceal, but that intent to conceal must be the business's primary purpose. (Claimant's Reply in Supp. Mot. J. Pleadings 5.) Mr. Jackson's reading of *One 1998 Tractor* is too narrow for two reasons. First, property can still be subject to forfeiture if it also has legitimate uses. As one court aptly explained in rejecting the primary purpose notion:

> Maginnis was a dealer of marijuana. She owned and drove a car in the normal course of her daily life. She was found with a significant quantity of marijuana and cash in her car. These facts are enough to establish the requisite 'substantial connection' between the vehicle and the criminal activity alleged. . . . The forfeiture statute does not invite an accounting of how many soccer games or fast food restaurants or other legitimate activities the car was used for; it merely requires that the government show a substantial connection between the charged activity and the vehicle.

*United States v. One 2001 Mercedes Benz ML 320*, 668 F. Supp. 2d 1132, 1135 (E.D. Wis. 2009). A requirement that courts only allow forfeiture of property whose primary purpose is to conceal an offense would go beyond the intent of CAFRA's amendment in 2000. Through this amendment, the legislature intended to require a substantial connection between property and an offense, while preserving the government's ability to use forfeiture law

14

as "an important crime-fighting tool for Federal, State, and local law enforcement." 146 CONG. REC. H2040, 2047.

Second, the *One 1998 Tractor* court specifically required that the government provide evidence "indicating that [the claimant's] trucking business was a sham, *or* that he operated it with the intent of concealing his criminal activity." 288 F. Supp. 2d at 714 (emphasis added). Mr. Jackson focuses on the first part of this holding by arguing that the Government's claim for forfeiture should fail because the Government did not show that Mr. Jackson's vehicles were involved in a sham. (Claimant's Reply in Supp. Mot. J. Pleadings, 4-6.) However, this argument is too narrow because the second part of the *One 1998 Tractor* court's holding provides that a substantial connection may be found if the claimant used the property with the intent of concealing his criminal conduct. 288 F. Supp. 2d at 714. According to the plain language of the court's holding, which makes no mention of primary purpose, this Court can reasonably infer that Mr. Jackson used his vehicles with the intent of concealing his criminal conduct. Mr. Jackson pled guilty to the fact that he used his personal vehicles to travel across state lines with the intent to engage in illicit sexual conduct with one of his sixteen year-old female students. (Compl. ¶¶ 10 & 15; Mot. J. Pleadings 3.) The Court finds it far-fetched to assume that Mr. Jackson did so without also intending to conceal this

conduct from others. The fact that he used his personal
vehicles, rather than another form of transportation, such as
public transportation, supports the inference that he intended to
conceal his conduct from those who could bear witness to the
inappropriateness of the situation.

In addition, the Government sets forth facts in its Verified
Complaint that indicate Mr. Jackson's intent to use his vehicles
to conceal his offense. The Government alleges that, on one of
the occasions in which Mr. Jackson had illicit sex with Jane Doe
in his Alexandria apartment, Mr. Jackson used his two-seat 2004
Lexus C430-2 to pick up Jane Doe from her residence in Bowie,
Maryland. (Compl. ¶ 12.) On that occasion, Jane Doe's mother
questioned Mr. Jackson about how he intended to transport several
students to an extracurricular school activity in the two-seat
Lexus. Mr. Jackson then responded that he would make several
trips because his other vehicles were being repaired. (Compl. ¶
12.)

The Court recognizes that the Government does not seek
forfeiture of the vehicle involved in this particular exchange,
because that vehicle has a lien in excess of its value. (Compl.
¶ 14.) However, these facts show that Mr. Jackson generally
intended to conceal from Jane Doe's mother his true purpose in
transporting her daughter. Mr. Jackson does not contend that
Jane Doe's mother knew of or consented to him transporting Jane

Doe across state lines for purposes of engaging in illicit sexual conduct with her on the other two occasions in which he used his four-seat 2001 Lexus LS430 and his four-seat 1998 Mitsubishi 3000GT. Therefore, the Court can reasonably infer that Mr. Jackson intended to conceal his conduct with regard to each of the vehicles he used to transport Jane Doe, including the four-seat 2001 Lexus LS430 and the four-seat 1998 Mitsubishi 3000GT the Government seeks to have forfeited. Accordingly, the Government sets forth sufficient facts to establish a substantial connection between Mr. Jackson's vehicles and his offense.

## (c) **Mere Transport**

Mr. Jackson argues that no federal decision has approved of vehicle forfeiture on facts similar to this case because illicit sex does not depend on vehicular transportation, unlike offenses such as drug distribution. Mr. Jackson further argues that something more than mere transport to the site of the offense is required to satisfy the substantial connection requirement. (Claimant's Opp'n to Mot. to Reconsider 6; Claimant's Mot. J. Pleadings 5.)

The Court rejects these arguments for two reasons. First, *United States v. 2004 Blue Lexus GX470*, the case most factually similar to the instant one, supports forfeiture. In *Blue Lexus*, the claimant was charged with exploitation of children to create child pornography in violation of 18 U.S.C. § 2251 and

17

transportation of a minor to engage in illegal sexual activity in violation of 18 U.S.C. § 2423(a). No. C08-5084BHS, 2008 WL 2224308, at *1-*2 (W.D. Wash. May 27, 2008). There, the government sought civil forfeiture of three items of property—a truck, boat, and tract of real property the claimant used to land his helicopter. *Id.* at *1. As to the truck and boat, the court allowed the government's claim of civil forfeiture to survive summary judgment. The court held that a genuine issue of material fact existed as to whether these items were substantially connected to the offense because the government alleged that they were used to attract, entice, and control the claimant's victims. *Id.* at *4. However, the government did not allege that illicit sexual conduct occurred in the truck or boat, and it did not allege that either was used to transport the victims to the site of illicit sexual conduct. *Id.* As to the plot of land, the court found the government's claims sufficient to withstand summary judgment because the government alleged that the claimant "used the helicopter to entice the alleged victims and transport them to locations where some of the [pornographic] videotapes were made." *Id.* at *5.

Here, although the Government does not allege that Mr. Jackson used his vehicles to attract, entice, or control Jane Doe, the Government does allege that Mr. Jackson used his vehicles to transport her to his apartment, where they engaged in

illicit sexual conduct. (Compl. ¶ 9, 11, 15, 17.) Compared to the helicopter landing pad in *Blue Lexus*, such an allegation is sufficient to merit forfeiture and establish a substantial connection between Mr. Jackson's vehicles and his offense. In *Blue Lexus*, the instrumentality that directly facilitated the victim's transportation was the claimant's helicopter. However, the court still found a sufficient nexus between the claimant's offense and the real property on which the helicopter arrived to merit forfeiture of the real property. Here, the Government does not seek forfeiture of Mr. Jackson's home, the place where he and Jane Doe arrived. Instead, the Government seeks forfeiture of the facilitating property itself, which has a stronger nexus to Mr. Jackson's offense than the helicopter landing pad discussed in *Blue Lexus*. Thus, the Court can conclude that a substantial connection exists between Mr. Jackson's vehicles and his offense.

Second, courts throughout the nation have found that vehicles used to transport drug conspirators to the site of an illicit drug deal are substantially connected to the underlying drug distribution offense, and are thus subject to forfeiture. *See, e.g., United States v. 2002 Chevrolet Avalanche 1500 4WD Pickup*, No. 07-1168, 2009 WL 910225, at *3 (C.D. Ill. Apr. 1, 2009)(finding vehicle forfeitable as facilitating property because it was used to deliver drugs, pick up money owed from drug sales, and pick up drugs from suppliers); *United States v.*

*2000 Jeep Grand Cherokee*, No. 07-CV-4114-DEO, 2008 WL 4691029, at
*3 (N.D. Iowa Oct. 23, 2008)(concluding that vehicle used on one
occasion to deliver cocaine was forfeitable under 18 U.S.C. §
983(c)); *United States v. One Dodge Durango 2004*, 545 F. Supp. 2d
197, 202 (D.P.R. 2006)(holding that vehicle containing no drugs
that was driven to drug trafficking planning meeting was subject
to forfeiture as facilitating property because a planning meeting
is "an integral part" of a drug transaction"); *Mann v. United
States*, No. Civ.A.MJG-02-2687, 2003 WL 23841450, at *2 (D. Md.
Mar. 3, 2003) (allowing forfeiture of automobile used to drive to
the scene of a prearranged drug deal).  Like the vehicles in
these drug distribution cases, it necessarily follows that
vehicles used to transport a minor across state lines for
purposes of illicit sexual activity are substantially connected
to Mr. Jackson's offense, regardless of whether the illicit
sexual conduct occurred in or near the vehicles.  Because Mr.
Jackson's vehicles were the instrumentalities he used to commit
the offense, they are intrinsically and substantially connected
to that offense.

Mr. Jackson concedes that courts before and after CAFRA's
amendment in 2000 have found a substantial connection "where
forfeiture [was] premised entirely upon the transportation of
participants to the location of criminal activity" in the drug
trafficking context.  (Claimant's Mot. J. Pleadings 14 n.4.)  He

reasons, however, that these cases add nothing to the substantial connection analysis because the nature of drug distribution offenses is different from the nature of sex offenses, in that the element of transportation is integral to the former and incidental to the latter. (Claimant's Mot. J. Pleadings 14-15 n.4.; Claimant's Reply in Supp. Mot. J. Pleadings 7.) Yet Mr. Jackson concedes that "the analysis the courts utilize in determining the 'substantial connection' is the same, regardless of the violation." (Claimant's Reply in Supp. Mot. J. Pleadings 7.) Given the Court's conclusion that the essence of Mr. Jackson's offense was the transport of Jane Doe across state lines, and not the illicit sexual conduct itself, it is conceded that the same substantial connection test that allows the forfeiture of vehicles used for mere transport to the site of drug distribution offenses also allows the forfeiture of Mr. Jackson's personal vehicles used for transport to the site of illicit sexual conduct.

By this holding, however, the Court does not intend that forfeiture be found appropriate any time property is used to transport participants to the site of an offense. Here, as with the claimant's offense in *Blue Lexus* of transportation of a minor to engage in illegal sexual activity, and as with drug trafficking offenses generally, the element of transportation is essential to the offense itself. This finding allows the Court

to determine that there is a plausible substantial connection between the transporting property and the offense. Accordingly, the Court denies the Claimant's Motion for Judgment on the Pleadings.

## IV. CONCLUSION

For the reasons stated, the Court denies Mr. Jackson's Motion for Judgment on the Pleadings because the Government pleads facts that plausibly suggest that a substantial connection exists between Mr. Jackson's vehicles and his offense of interstate travel with intent to engage in illicit sexual conduct. Accordingly, it is hereby

ORDERED that Claimant Mark Allen Jackson's Motion for Judgment on the Pleadings (Dkt. No. 15) pursuant to Federal Rule of Civil Procedure 12(c) is DENIED.

The Clerk is directed to forward a copy of this Memorandum Opinion to counsel.

Entered this _3rd_ day of December, 2010.

Alexandria, Virginia

_/s/_

Gerald Bruce Lee
United States District Judge